**Ernest QUICK, Appellant,**

**v.**

**George C. MARTIN et al., Appellees.**

**William L. MASSEY et al., Appellant,**

**v.**

**GEORGE C. MARTIN, INC., et al., Appellees.**

**Nos. 20925, 21003.**

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 19, 1967.

Decided Feb. 27, 1968.

---

1. *See* Brown v. United States, 125 U.S. App.D.C. 220, 223, 370 F.2d 242, 245 (1966); Sacks v. United States, 41 App. D.C. 34, 36 (1913).

Mr. Joseph H. Koonz, Jr., Washington, D. C., with whom Messrs. Martin E. Gerel and Lee C. Ashcraft, Washington, D. C., were on the brief, for appellant in No. 20,925.

Mr. Leonard Schaitman, Attorney, Department of Justice, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Acting Asst. Atty. Gen., Carl Eardley, Messrs. David G. Bress, U. S. Atty., and Morton Hollander, Attorney, Department of Justice, were on the brief, for appellants in No. 21,003. Mr. Frank Q. Nebeker, Asst. U. S. Atty., also entered an appearance for appellants in No. 21,-003.

Mr. Philip J. Lesser, Washington, D. C., with whom Messrs. I. Irwin Bolotin and Gerald Herz, Washington, D. C., were on the brief for appellees.

Before PRETTYMAN, Senior Circuit Judge, and McGOWAN and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

Appellant Quick, a construction worker, was injured when a form for concrete weighing thirty-five pounds dropped from some five feet above him, striking him on the head. Appellees, his employer and its insurance company, voluntarily paid him temporary disability benefits through June of 1964. Payments were discontinued thereafter on the ground that Quick was no longer disabled. Alleging "permanent brain damage" and a "conversion neurosis," Quick filed a claim for permanent total disability benefits under the Longshoremen's and Harbor Workers' Act.[1] Appellant Deputy Commissioner Massey, after holding a hearing, awarded temporary total disability payments, but this award was challenged by appellees, who brought an action in the District Court to set it aside. That court accepted appellees' contentions, ruling that while there was evidence to support a finding of partial disability, there was none that would support a finding of total disability. The case was remanded for consideration by the Deputy Commissioner of whether an award should be made for partial disability. These consolidated appeals follow.

We rule that the District Court erred in setting aside the award. We begin with the settled doctrines that findings of the Deputy Commissioner are entitled to great deference by the courts and must stand if supported by substantial evidence. Appellees do not challenge these fundamentals, but reiterate here the contention accepted by the District Court—that no evidence supports the

---

1. 33 U.S.C. §§ 901–950 (1964) made applicable in 1928 to the District of Columbia, see 36 D.C.Code § 501 (1967).

finding of total rather than partial disability.

The difference between total and partial disability is important for the employer and its insurance carrier, even to the point where, as here, the employer is contesting the total disability finding though it would apparently acquiesce in a determination of, say, 90% disability.

Section 14(m) of the Act[2] limits the employer's liability to $24,000 for any one "injury," but that limit is inapplicable to an injury resulting in permanent total disability. Although the Deputy Commissioner awarded only temporary total disability benefits, appellees fear from past experience that once the finding of total disability is made even with a "temporary" modifier it is likely to be ultimately converted to one of permanent total disability.

The Deputy Commissioner urges that appellees did not raise before him the issue of the extent of claimant's disability, and hence it was error for the District Court to permit that question to be raised on appeal. Thus appellees' counsel at the outset of the hearing stated that the ground for controversion of Quick's claim was that "the claimant is not disabled as a result of the injury of September 7, 1962, and that he is not in need of medical care as a result of this injury * * *." The Deputy Commissioner nailed the point down more specifically. "I take it that the issues will be a question of casually related disability, that will be the sole issue * * *?" Counsel replied, "Yes, sir." Appellees' subsequent case was built on a theory that claimant was no longer suffering an injury from his accident, and that he was faking insofar as he claimed that he was unable to work. The Commission's counsel protests that at the hearing the employer's point was that claimant was malingering, and he should not be permitted to complain of procedural inadequacies of the record in regard to the extent of injury.

Appellees respond that they had been paying claimant for a while but discontinued the payments when their doctor concluded he had erred in his diagnosis of conversion hysteria. We are told on argument that when the employer filed its Valid Basis to Controvert, a Bureau form, in order to justify discontinuance of payment,[3] it stated as its reason that the claimant was no longer disabled, and it is contended that this included, without need for further particularity, the defense that if the claimant was disabled at all, he was only partially disabled, and put the claimant to his proof that he was disabled and if so to what extent.

▪ Certainly an employer may not complain to the court of paucity of evidence on a point that, either expressly or by fair implication, he did not maintain as an issue in the administrative stage.[4] But we are reluctant, at least without better understanding of the practice in the Bureau, to accept the Commissioner's argument put to us as a jurisdictional bar. When the employer asserts a valid basis to controvert, the Commissioner has the duty of making necessary determinations. Often the only proceeding is an informal conference. Hearings are held in a minority of cases. Otherwise the administrative system might well collapse. We do not choose to consider whether and to what extent the claimant has the duty to introduce evidence, or may invoke statutory presumptions at this stage. Under Bureau practice, we are told, the fact is that the claimant does put on evidence in some if not most cases. There is apparently not so much attention as in court cases to the order of putting on evidence. The Commissioner strives for expedition and informality, and there is no telling from one case to another just

2. 33 U.S.C. § 914(m) (1964).

3. 33 U.S.C. § 914(a) (1964).

4. Britton v. Great Am. Indem. Co., 110 U.S. App.D.C. 190, 290 F.2d 381, cert. denied,

368 U.S. 900, 82 S.Ct. 178, 7 L.Ed.2d 95 (1961); Metropolitan Cas. Ins. Co. v. Hoage, 67 App.D.C. 54, 56, 89 F.2d 798, 800 (1937).

who will put on evidence first. Furthermore, the Commissioner typically holds the record open for supplementary evidence.

 Assuming, however, that the extent of disability was technically preserved at the hearing as a basis to challenge the award, the reality is that appellees' case at the hearing was that Quick was not suffering from any work-related injury whatever. Appellees' witnesses did not address themselves to whether, if valid, the conversion reaction claimed was less than totally disabling. In that setting the Deputy Commissioner's finding of temporary total disability was supported by substantial evidence. That an issue is not seriously contested has implications for the quantity of evidence that must be adduced to support a finding. Evidence that might seem too skimpy to count in support of a finding on a hotly contested issue looms larger when the factual dispute in question is but dimly alluded to at hearing. This is application as a matter of substantive rather than procedural doctrine of the policy that administrative determinations will not be upset by the courts for reasons not fairly presented at the administrative level. Had the dispute as to these issues been focused, "It is likely that * * * abundant evidence would have been forthcoming." Metropolitan Casualty Insurance Co. v. Hoage, 67 App.D.C. 54, 56, 89 F.2d 798, 800 (1937).[5]

Appellant Quick had an enviable work record prior to the accident, and was characterized as a "hardworking" man with "a lot of get-up-and-go, and a lot of drive and a lot of initiative." Since the accident, if his testimony is believed, he suffers from numbness in his left side, spells, headaches, and a ringing in his ears. He wants to return to work, but feels completely unable to do anything. He held two jobs since the accident, but both briefly, because his nervousness and "spells" made him an unsatisfactory worker. His medical expert testified that Quick was disoriented and is "convinced he is helpless."

Appellees lean heavily on two items of testimony. Claimant said he thought that he could plow behind a mule—as he did in his youth in North Carolina—and the assertion is that this testimony shows his suitability for general farm labor if he will repair to a less urbanized setting. In context, we think his comment is not so much a statement of suitability for labor generally as a lament that the only work possible without paralyzing fear is now performed by tractor, a cruel reminder that things are not now what they used to be. Our increasingly complex and automated culture has unfortunately relegated to the unemployable bin many men who in past years could have worked productively. One cost of this progress is the need to compensate many who could formerly fend for themselves.

Appellees also rely on the statement of appellant's medical expert that claimant is capable of performing routine repetitive tasks. In context, particularly in view of the doctor's subsequent testimony that claimant might be emotionally disabled from such work as digging a ditch, this testimony does not show ability to work.

For the rest, appellees point to testimony of their experts that claimant is not physically disabled. Such testimony is beside the point, since concededly there was ample evidence supporting the Deputy Commissioner's finding that claimant suffered a conversion reaction. That the limbs may be capable of performing the motions does not mean the human organism can do the job.

---

5. To the extent that appellee's claims of no substantial evidence are largely based on the fact that no one specifically stated the disability was "total," this formal objection obviously could have been remedied if clearly and seasonably articulated at the administrative level.

 The concept of "total disability" is economic as well as medical.[6] It is not fatal that there was no medical testimony expressly stating that the disability was total. The Deputy Commissioner—accepting the medical testimony that claimant was disoriented and confused—could properly have inferred total disability from claimant's testimony that he wanted very much to work, as he willingly had in the past, but simply could not. Our conclusion that the Deputy Commissioner did not act improperly is underscored by the fact that his award was only one of temporary total disability benefits. The issue of the extent of claimant's disability may be questioned in future proceedings should the Commissioner give consideration to conversion of the award to permanent total disability.

 At oral argument, we were advised that the carrier ceased paying compensation due under the award as of the date of the District Court's order. We explored the question whether interest should be awarded for amounts accrued and unpaid under the award. Counsel for appellees concedes that it should be, and we so hold. The theory of the Longshoremen's and Harbor Workers' Act is that compensation is due, even without an award, unless there is a valid basis for controverting the workman's claim, 33 U.S.C. § 914(a) (1964). Moreover, compensation must be paid under an award even during the pendency of a review proceeding unless the employer can demonstrate irreparable damage if he continues payments, 33 U.S.C. § 921(b) (1964). Any stay or injunction would be permissible only if it provided for making the employee whole should the award be upheld, and such provision would include interest payments. We see no reason why the District Court order, insofar as it has the same effect as such an injunction in causing a suspension of payments, should not carry with it the obligation to pay interest should the award ultimately be vindicated on appeal.[7]

Reversed.

Senior Circuit Judge PRETTYMAN concurs in the result.

---

6. *See, e. g.,* Eastern S.S. Lines, Inc. v. Monahan, 110 F.2d 840 (1st Cir. 1940); Employers Liability Assurance Corp. v. Hughes, 188 F.Supp. 623 (S.D.N.Y.1959) (Weinfeld, J.).

7. The record does not indicate whether the termination of payments was pursuant to an injunction granted on showing of irreparable injury. If the employer determined unilaterally that the District Court order setting aside the award and remanding for determination of extent of disability permitted it to cease payments even though an appeal by the employee was pending (or imminent), the question would arise whether this course was permissible in view of 33 U.S.C. § 921(b) (1964), which contemplates payments until "final decision in any such proceeding." On that point, without benefit of briefs or arguments, we intimate no view. Nor need we consider whether, in the event a statutory penalty should be held assessable for wrongful nonpayment, the interest herein provided would constitute an offset against such penalty.