558 F.2d 1192
 EQUITABLE EQUIPMENT COMPANY, INC. and Employers Insurance of
Wausau, Petitioners,
v.
George W. HARDY and Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondents.
 No. 76-2643.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 9, 1977.
 
 Wood Brown, III, New Orleans, La., for petitioners.
 Robert J. Mack, Velma P. O'Neal, Hammond, La., for George W. Hardy.
 William J. Kilberg, Sol. of Labor, U. S. Dept. of Labor, Laurie M. Streeter, Associate Sol., Harry L. Sheinfeld, Atty., Washington D.C., for respondents.
 On Petition for Review of an Order of the Benefits Review Board (Louisiana case).
 Before WISDOM, GEE and FAY, Circuit Judges.
 FAY, Circuit Judge:
 
 
 1
 The Benefits Review Board, United States Department of Labor, affirmed the decision and order of the administrative law judge which awarded compensation and medical benefits under the Longshoremen's and Harbor Workers' Compensation Act, as amended, 33 U.S.C. § 901 et seq. (the Act), and held Sections 8(f) and 44 of the Act, 33 U.S.C. §§ 908(f) and 944, inapplicable to the facts of this case. Petitioners do not contest the award of compensation or benefits to the injured employee, but contend that the Board erred as a matter of law in rejecting the applicability of Sections 8(f) and 44. We agree with petitioners and therefore grant the petition for review and set the Board's order aside.[1]
 
 
 2
 George Hardy was injured on May 3, 1973 in the course of his employment with petitioner, Equitable Equipment Company. As a result of this accident, he was obliged to undergo substantial back surgery which, in conjunction with his pre-existing condition, left him permanently and totally disabled. Mr. Hardy's pre-existing condition was described by the doctors testifying in this cause as a "pseudoarthrosis" or false fusion of the joints in Hardy's back, an impairment which, according to the doctors' testimony, existed prior to the May 3rd accident and which materially and substantially affected his present condition.[2] The administrative law judge found, however, that Hardy was performing all the duties of his employment as a first class shipfitter, including lifting heavy objects, stooping and climbing. Based on this finding, the administrative law judge concluded that the employee's pre-existing back impairment was neither manifest nor disabling as required for application of Sections 8(f) and 44 of the Act.[3]
 
 
 3
 The pertinent part of Section 8(f) of the Act, 33 U.S.C. § 908(f) provides:[4](f) Injury increasing disability: (1) In any case in which an employee having an existing permanent partial disability suffers injury, the employer shall provide compensation for such disability as is found to be attributable to that injury . . . . In all . . . cases of total permanent disability or of death, found not to be due solely to that injury, of an employee having an existing permanent partial disability, the employer shall provide . . . compensation payments or death benefits for one hundred and four weeks only. . . .
 
 
 4
 (2) After cessation of the payments for the period of weeks provided for herein, the employee or his survivor entitled to benefits shall be paid the remainder of the compensation that would be due out of the special fund established in Section 944 of this title (§ 44 of the Act).
 
 
 5
 This Section is often referred to as the "second injury," "subsequent injury," or "special fund" provision because it provides an exception to the general rule that an employer takes an employee as he finds him,[5] restricting the employer's liability under workmen's compensation laws to that portion of the disability which resulted from the recent or "second" injury. When an employee who was already inflicted with a permanent disability at the time he was hired suffers a compensable injury while working for the employer, pursuant to Section 8(f), this employer is only responsible for 104 weeks of compensation,[6] with the balance of compensation determined to be due the employee to be paid out of the federally created and administered special fund.[7] Thus, in order to trigger the application of the statute, the critical words are "an employee having an existing permanent partial disability."The standard by which we review administrative decisions under this Act is to reverse only if there is an error of law or when a finding of fact is unsupported by substantial evidence on the record considered as a whole. O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 508, 71 S.Ct. 470, 95 L.Ed. 483 (1951); Presley v. Tinsley Maintenance Service, 529 F.2d 433 (5th Cir. 1976); Offshore Food Service, Inc. v. Benefits Review Board,524 F.2d 1136 (5th Cir. 1975); 1972 U.S. Code Cong. & Admin.News pp. 4698, 4709; 33 U.S.C. § 921(b)(3) and (c).
 
 
 6
 The Board maintains that an existing permanent partial disability requires the employee to be disabled in an economic sense, that is, disability implies a condition which actually or presumptively[8] reduces the employee's wage earning capacity.[9] The Board further contends, and various courts have held, that the disability must be "manifest" to the employer (rather than "latent") in order for such disability to qualify under Section 8(f).[10]
 
 
 7
 The leading case, Lawson v. Suwannee Fruit & Steamship Co., 336 U.S. 198, 69 S.Ct. 503, 93 L.Ed. 611 (1949), discussed the disability requirement in light of the origin and purpose of the special fund provision. The facts concerned a man who had previously lost the sight in one eye through causes unrelated to his employment. A subsequent injury in the course of his employment deprived the man of the use of his second eye. The argument advanced was that the second-injury provision in Section 8(f) was intended to apply only to situations where the first or pre-existing disability was the result of an occupational injury, in accordance with the definition of disability in Section 2(10) of the Act, 33 U.S.C. § 902(10).[11] The Supreme Court, acknowledging that the purpose of Section 8(f) was to encourage the hiring of handicapped workers and to protect employers who hired handicapped workers, held that "previous disability"[12] meant disability in fact, not necessarily disability as required for compensation purposes. Thus, in Lawson, the employer was held liable only for the permanent partial disability resulting from the loss of one eye, with the remaining compensation due for permanent total disability (loss of sight in both eyes) payable out of the special fund.
 
 
 8
 It appears to this Court that utilizing Section 8(f) in the instant case would be in harmony with the discussion in Lawson and with the language and purpose of the statute. We do not see any requirement that the disability be an economic one. If Section 8(f) is intended to prevent discrimination against handicapped workers, as indeed it is, then it would seem that a man with a bad back is handicapped in the "market place" just as much as a man with one eye. Certainly job opportunities are limited for a person with any kind of serious physical impairment, and it is often difficult if not impossible for such a person to retain employment once a prospective employer is aware of the person's impairment. Even if the applicant is hired, his inferior condition does not disappear.
 
 
 9
 In adopting this position, we follow the Third Circuit which has recently held that an existing disability need not be an economic one. In the companion cases, Atlantic & Gulf Stevedores, Inc. v. Director, Office of Workers' Compensation Programs, United States Department of Labor, 542 F.2d 602 (3rd Cir. 1976)[13] and Nacirema Operating Co., Inc. v. Benefits Review Board, United States Dept. of Labor, 538 F.2d 73 (3rd Cir. 1976),[14] the court of appeals held that Section 8(f) and the special fund are applicable when a prior condition, known (manifest) to the employer, is determined to have contributed to the subsequent injury. After reviewing the legislative history of the statute and determining that the 1972 amendment did not change the non-technical Section 8(f) concept of disability explained in Lawson,[15] the court opined that requiring an economic disability would defeat the purpose of Section 8(f):
 
 
 10
 Indeed, that section would be transformed into a veritable Catch-22. Any employer who in reliance on § 8(f) hired a disabled person would immediately lose the statutory limitation on his liability, since upon hiring a handicapped worker any preexisting economic disability would terminate. The result is, of course, absurd, and is inconsistent with the policy objectives discussed in the Lawson case. 542 F.2d 602, 609.[16]
 
 
 11
 We are cognizant that the definition of "existing disability" we adopt today conflicts with other courts' interpretation of the phrase. For example, one case discussed and rejected in Atlantic & Gulf Stevedores, was American Mutual Ins. Co. of Boston v. Jones, 138 U.S.App.D.C. 269, 426 F.2d 1263 (1970), where the court sustained the award of disability compensation to a mentally deficient man who suffered an injury to his hand. Relying on the statutory definition provided in Section 2(10) of the Act,[17] the court held that disability is an economic and not a medical concept, stating that
 
 
 12
 (e)ven a relatively minor injury must lead to a finding of total disability if it prevents the employee from engaging in the only type of gainful employment for which he is qualified. Id. at 1266.[18]
 
 
 13
 The court found the evidence of economic disability overwhelming and affirmed the award of compensation. The court also concluded, "not without some hesitation," that Section 8(f) did not pertain to the facts of that case since the man's mental deficiency was not manifest to the employer at the time of his employment.
 
 
 14
 With respect to the Section 8(f) argument presented in Duluth, Messabi and Iron Range Railway Co. v. United States Dept. of Labor, 553 F.2d 1144 (8th Cir. 1977), the court acknowledged but did not decide the different meanings of "existing disability." Neither agreeing nor disagreeing with Atlantic and Gulf Stevedores, the court found that any prior disability in Duluth was not manifest and therefore the employer could not share his compensation liability with the special fund, although the employee's present disability clearly resulted from aggravation of a previous spinal condition.[19]
 
 
 15
 Directing our attention to the manifest-latent issue, we note that the administrative law judge found no evidence that claimant's disability was manifest at the time he commenced employment with petitioner Equitable Equipment Co. in September, 1972.[20] The Board agreed, stating, "Whatever injuries claimant had were latent, not manifest." Recognizing that these "existing disabilities" must be manifest to trigger Section 8(f), we nevertheless reverse this finding as unsupported by substantial evidence. This employer was clearly aware of the employee's existing condition.
 
 
 16
 It appears from the record that Mr. Hardy completed an application for employment with Equitable Equipment Co. on two different occasions, in July, 1971, and August, 1972. On the 1971 application Hardy stated that he had trouble with his back, that he had been hospitalized twice due to an automobile accident, and that he had received disability compensation benefits for one and one-half years. The pre-employment physical examination report sent to the employer by "The New Orleans East Industrial Clinic" indicates that the physician recognized the prior back problems and recommended that the employee not be hired. There is no indication whether Hardy was hired or rejected at this time, although the record suggests that Hardy was employed by Equitable in 1971 at a different location than in 1972. The 1972 application also reveals that the company's examining physician was aware of Hardy's prior back surgery, which of course would have been obvious once Hardy removed his shirt. A letter from Hardy's treating physician in August 1972 stated that Hardy's examination and x-ray studies showed that he had made an excellent recovery and was capable of carrying out strenuous work. Hardy's unrefuted testimony at the hearing before the administrative law judge further indicates that he informed the physician at the pre-employment physical about his previous back problems, although he said he did not tell the doctor about any pain because he was not feeling any at that time.
 
 
 17
 Based on the evidence in the record as a whole, the only conclusion that can be drawn is that the employer or its medical staff actually knew about Hardy's previous back impairment when they hired him. The administrative law judge and the Board were in error when finding that the pre-existing disability was latent rather than manifest.
 
 
 18
 The Petition for Review will be granted and the Board's order will be set aside. This matter is remanded for the entry of appropriate orders affording the petitioners relief.
 
 
 
 [1]
 33 U.S.C. § 921(c) provides for review in this Court
 
 
 [2]
 The orthopedic surgeon who treated Mr. Hardy after his May 3rd injury testified that he had asked the plaintiff with some incredulity why he had gone back to work in a shipyard. Asked why he had posed this question, the doctor testified:
 Because he had undergone several back operations, a laminectomy, two fusion operations and something in here about the graft being rejected and plus some drainage but I don't know whether it was infection or not, and I was just amazed that somebody put him back on the job requiring heavy lifting. (Deposition of Dr. Kitziger, p. 26.)
 A letter from this doctor reiterated the pre-existing nature of the disability and rated it a 20 percent permanent partial disability of the spine.
 
 
 [3]
 The administrative law judge stated, "It is . . . obvious that claimant had a serious pre-existing back condition at the time of the injury of May 3." He further stated:
 There is no evidence that claimant's disability was "manifest" at the time he commenced employment with respondent in September 1972. . . . As far as respondent knew, claimant was fully recovered from his prior disabilities. Claimant successfully passed a comprehensive physical examination before commencing employment with respondent. . . . Additionally, a letter from Dr. Means indicated that claimant had made an excellent recovery and could perform strenuous work. . . . Simply stated, the injury of May 3 aggravated a preexisting but dormant condition which was in no way either "manifest" or "disabling" until that time. As noted by Dr. Kitziger, the injury of May 3 "sent claimant down the chute". . . . I conclude that Section 8(f) is inapplicable.
 In its order affirming the decision of the administrative law judge, the Board agreed with the above statements.
 
 
 [4]
 Before the statute was amended in 1972, the pertinent language of Section 8(f) read as follows:
 . . . an injury which of itself would only cause permanent partial disability but which, combined with a previous disability, does in fact cause permanent total disability . . . (emphasis added).
 Petitioners place great emphasis on the change in the language.
 Some discussion of the legislative history is found at 1972 U.S. Code Cong. & Admin.News pp. 4698-4720. In reference to the section at hand, the House Report stated:
 INJURY FOLLOWING PREVIOUS IMPAIRMENT
 The bill amends Section 8(f) of the Act (Section 9 of the bill) in order to limit the burden on employers in so-called second injury cases. Many employers have an inaccurate impression regarding the liabilities for workmen's compensation when they employ handicapped workers. It is unfortunately a widespread belief that an employer is subjected to burdensome compensation costs where a handicapped worker received an injury at the new place of employment. The provision in the bill makes clear that the employer's responsibility for the subsequent or second injury is limited to the scheduled award for the second injury or 104 weeks, whichever is greater. The remaining obligation to pay that employee where he is totally or partially disabled will fall upon the special funds existing under Section 44 of the Act. This method of spreading the risk among all employers is intended by the committee to encourage the employment of handicapped workers.
 Id. at 4705-6, House Report No. 92-1441, P.L. 92-576.
 The Senate version of the 1972 amendment, S. 2318, substituted the phrase "permanent physical impairment" for the term "existing disability," but the final version of the amendment retained the original language. (Brief of Benefits Review Board, p. 7). Based on the limited legislative history available and the old and new language of the statute, we do not find any significant change in meaning with respect to the issue before this Court. It appears that when amending the Act, Congress intended to broaden Section 8(f) to include permanent partial as well as permanent total disability and clarify it to insure that it would be available in cases of second injuries not coming within the so-called schedule injury provisions (Section 8(c)(1)-(20), 33 U.S.C. § 908(c)(1)-(20).
 Two other circuits have found no substantive change in the amendments to Section 8(f). See Atlantic & Gulf Stevedores, Inc. v. Director, etc., 542 F.2d 602, 608 (3rd Cir. 1976); Duluth, Messabi and Iron Range Railway Company v. U. S. Dept. of Labor, etc., 553 F.2d 114 (8th Cir. 1977) (citing Atlantic & Gulf, supra.).
 
 
 [5]
 Malone, Plant and Little, The Employment Relation 342-44, 410-11 (1974). See, e. g., Southern Stevedoring Co. v. Henderson, 175 F.2d 863 (5th Cir. 1949)
 
 
 [6]
 When a claim is filed by an injured employee, it is first determined whether his injury falls within the other compensation provisions of the Act and, if so, the employer or his carrier is liable for such compensation. If it is found to be a compensable injury and if it can be shown that the employee had an existing permanent disability prior to this injury, which existing disability contributed to the resulting total permanent disability, then the employer's liability for compensation may be limited to 104 weeks by Section 8(f)
 
 
 [7]
 Section 44 of the Act, 33 U.S.C. § 944, establishes a special fund to be held in trust by the Treasurer of the United States and administered by the Secretary. Three sources finance the special fund: 1) employers' contributions of $5000 for compensable deaths of employees when there is no appropriate beneficiary; 2) payments from carriers and self-employers based on the amount of compensation and medical payments they made during the previous year proportionate to the total amount paid by all carriers and self-insurers; 3) money collected from fines and penalties
 
 
 [8]
 Certain physical impairments, listed in the statute as schedule injuries, 33 U.S.C. § 908(c)(1)-(20), are "presumed" disabilities
 
 
 [9]
 There is judicial precedent to support this interpretation. See n. 19 infra and text accompanying notes 18 and 19
 
 
 [10]
 Realizing that the purpose of the Act is to prevent discrimination against handicapped workers (which discrimination might occur if employers were liable for total compensation after a subsequent injury to a person suffering from a pre-existing disability), some courts have developed a manifest-latent test as a prerequisite for Section 8(f) eligibility, the reasoning being that if the disability were not manifest to the employer or the employer not aware of it, then he could not discriminate because of it. As stated in American Mutual Ins. Co. of Boston v. Jones, 138 U.S.App.D.C. 269, 426 F.2d 1263 (1970):
 § 8(f)(1) does not apply to every case of permanent total disability in which a present injury is not the sole cause of the disability. It was not intended to provide a windfall to employers, nor to actively encourage employment of the handicapped. Its purpose was simply to remove that aspect of discrimination against the disabled which would otherwise be encouraged by the very statute intended to protect them.
 Any such discrimination, however, must rest upon knowledge of the characteristic upon which the discrimination is to be based. In consequence, courts have distinguished between "manifest" and "latent" conditions for purposes of apportioning claims between employers and special funds such as the present one. Although some jurisdictions make the question turn upon the employer's actual knowledge of the employee's condition, such a test has obvious practical difficulties in application. Practice under the Longshoremen's Act has followed the more general rule, and sought to define certain classes of disability as "manifest" or "latent" without regard to the employer's actual knowledge of the employee's condition. (footnotes omitted). 426 F.2d at 1267-68.
 Similarly, in Dillingham Corp. v. W. L. Massey, 505 F.2d 1126 (9th Cir. 1974), the court was considering a man's disability resulting from an injury which severely aggravated a previously broken hip. Sustaining the finding of percentage disability and affirming the inapplicability of Section 8(f), the court stated:
 Congress did not intend that all pre-existing conditions come under coverage by the Fund, but only those "manifest" at the time of initial employment (citing American Mutual Ins. of Boston, supra ) . . . . An underlying condition which is not manifest to a prospective employer cannot qualify as a previous disability. United States Fidelity & Guaranty Co. v. O'Keeffe, 240 F.Supp. 816 (S.D.Fla.1962). Thus, the key to the issue is the availability to the employer of knowledge of the pre-existing condition, not necessarily the employer's actual knowledge of it. American Mutual, supra, 426 F.2d at 1267.
 The determination of a previous disability's manifestation is a factual one, and a number of factors may come into play. The employee's appearance, medical reports and work experience are relevant, but the critical element is what the employer has available to him when the hiring occurs, should he decide to take notice of it. . . . 505 F.2d at 1128.
 Atlantic and Gulf Stevedores v. Director, Etc., 542 F.2d 602 (3rd Cir. 1976), added:
 The latent-manifest test is one method for separating eligible from ineligible employers. In view of the difficulty of proving actual knowledge of a disability, the test is ordinarily an objective one. Conditions that are latent rather than manifest to a prospective employer do not qualify as § 8(f) disabilities. 542 F.2d at 609.
 Duluth, Messabi and Iron Range Railway Co. v. U. S. Dept. of Labor, 553 F.2d 1144 (8th Cir. 1977), concerned an employee, Holten, who worked as a "lift man" in the loading of iron ore boats. Prior to being injured during the course of his employment, the employee had suffered from an osteoarthritic condition in his spine which, according to medical testimony, was aggravated by the subject injury. With respect to the Section 8(f) claim, the court held that the employer could not benefit from Section 8(f), explaining:
 Here, the parties have assumed that Holten's prior medical condition was a manifest one which the Employer could not have failed to notice. The Employee had been off work and hospitalized for the condition several times prior to 1973. The record, however, shows that Holten worked for 14 years after his 1959 hospitalization without disclosing any medical problems to his Employer, nor did Employer's periodic routine medical examinations (given once every three years) disclose any substantial condition of ill health which might affect Holten's ability to work. . . . The determination of whether a previous disability was "manifest" or "latent" is a factual one, and a number of factors may come into play. The critical element is what information the Employer has available to him when the employee is hired. See Dillingham Corp. v. Massey, 505 F.2d 1126 (9th Cir. 1974). Although the administrative law judge made no factual determination on this point, the Employer's own medical examinations demonstrate that the information available to the Employer during Holten's employment did not make Holten's arthritic condition manifest to the Employer. Here, the Employer is bound by its own negative medical findings. The Employer presented no other evidence that it had other sources of information regarding Holten's prior condition. The knowledge possessed by the physicians treating Holten in 1959 cannot be attributed to the Employer. They were not serving as "company" doctors while treating Holten, nor did any treating physician serve as an examining physician for the Employer. 553 F.2d at 1151.
 See also, United States Fidelity and Guaranty Co. v. O'Keeffe, 240 F.Supp. 813 (D.C.Fla.1962) (an inadequate personality found to be an underlying weakness not manifest to employer held not a previous disability); United States Fidelity and Guaranty Co. v. O'Keeffe, 240 F.Supp. 816 (D.C.Fla.1962) (arthritic condition not manifest to employer nor economic disability could not be previous disability).
 In passing we would like to note that Boyd-Campbell Co., Inc. v. R. J. Shea, 254 F.Supp. 483 (D.C.Tex.1966), is often cited to support the manifest requirement. It appears that Boyd-Campbell was holding that since congenital back anomalies were not a schedule injury, they could not fall within Section 8(f)'s prior disability. The 1972 amendments to Section 8(f) expressly refuted this interpretation. See n. 4 supra.
 
 
 [11]
 Section 2 provides that "when used in this Act . . ., (10) 'Disability' means incapacity because of injury . . . ." The word "injury" is defined as "accidental injury or death arising out of and in the course of employment . . . ." Section 2(2)
 
 
 [12]
 Section 8(f) used the words "previous disability" prior to the amendment in 1972. See n. 4 supra
 
 
 [13]
 In Atlantic & Gulf, the administrative law judge found that prior to the employee's fatal heart attack, the employee, a longshoreman hatch boss, was suffering from diabetes mellitus, labile hypertension and cardiac arrhythmia, that such a person with such a condition is predisposed to heart attacks, and that the employer was aware of these medical problems. The administrative law judge concluded that the employee was suffering from a prior disability within the meaning of Section 8(f). Finding substantial evidence in the record to support these findings, the court of appeals reversed the Benefits Review Board's reversal of the administrative law judge's opinion
 
 
 [14]
 In Nacirema, the administrative law judge found that prior to the disabling heart attack, the longshoreman was suffering from a permanent partial disability within the meaning of Section 8(f) based on evidence of prior congestive heart failure, hypertension, and diabetes which contributed to the heart attack and which was manifest to the employer. The court reversed the Board's remand and sustained the decision of the administrative law judge, citing Atlantic and Gulf
 
 
 [15]
 542 F.2d 602, 606-08
 
 
 [16]
 The court perceptively noted:
 The Director concedes in his brief that the acceleration or aggravation of a preexisting heart condition by an employment-related event that produces disability is a compensable injury under the (Act). . . . Thus there is no question that some source, either the Special Fund or the employer, is liable for death benefits after the 104th week. (citations omitted). 542 F.2d at 608.
 
 
 [17]
 33 U.S.C. § 902(10). See n. 11 supra
 
 
 [18]
 "The degree of disability in any case cannot be measured by physical condition alone, but there must be taken into consideration the injured man's age, his industrial history, and the availability of that type of work which he can do." American Mutual Ins. Co., 426 F.2d at 1265, quoting Eastern S. S. Lines, Inc. v. Monahan, 110 F.2d 840, 842 (1st Cir. 1940)
 
 
 [19]
 For further discussion of Duluth, see n. 10 supra. Other examples of cases requiring an economic disability are Quick v. Martin, 130 U.S.App.D.C. 83, 397 F.2d 644 (1968) (concept of disability for compensation purposes, not specifically § 8(f), is economic as well as medical); John W. McGrath Corp. v. Hughes, 289 F.2d 403 (2nd Cir. 1961) (disability for compensation purposes, not specifically § 8(f) should be evaluated in terms of economic not medical terms); United States Fidelity and Guaranty Co. v. O'Keeffe, 240 F.Supp. 816, 818 (D.C.Fla.1962). Professor Larson wrote, "(A)pportionment does not apply . . . in any case in which the prior condition was not a disability in the compensation sense." 2A Larson, The Law of Workmen's Compensation, § 59.20 at 10-273 (1974), citing Boyd-Campbell Co. v. Shea, 254 F.Supp. 483 (D.C.Tex.1966) (see n. 10 supra ) and other cases
 
 
 [20]
 See n. 3 supra