135 F.3d 366
 MOREHEAD MARINE SERVICES, INC.; CNA Insurance Companies, Petitioners,
v.
Vernon E. WASHNOCK; Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondents.
 No. 96-4188.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 12, 1997.
Decided Jan. 29, 1998.
 
 Todd M. Powers (argued and briefed), Schroeder, Maundrell, Barbiere & Powers, Cincinnati, OH, for Petitioners.
 Steven C. Schletker (argued and briefed), Schletker, Hornbeck & Moore, Covington, KY, for Vernon E. Washnock.
 Carol A. DeDeo, Michael S. Hertzig (argued and briefed), U.S. Dept. of Labor, Office of the Solicitor, Washington, DC, for Director, Office of Workers' Compensation Programs, U.S. Department of Labor.
 Before: SUHRHEINRICH and MOORE, Circuit Judges; BELL, District Judge.*
 MOORE, Circuit Judge.
 
 OPINION
 
 1
 Petitioners, Morehead Marine Services, Inc. and CNA Insurance Companies, seek review of the Benefits Review Board's affirmance of a decision and order by an administrative law ("ALJ") on four grounds. First, petitioners contend that the ALJ erred when he ordered petitioners to pay permanent total disability payments pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA") to the claimant, Vernon Washnock, because a February 10, 1989 work accident did not result in a total disability of the claimant. Second, petitioners contend that the ALJ erred in finding that the petitioners were not eligible for relief under the so-called "second-injury" provision of the LHWCA, 33 U.S.C. § 908(f). Third, petitioners object to the ALJ's finding that Washnock reached maximum medical improvement on March 6, 1992. Finally, petitioners argue that the ALJ erred in awarding Washnock medical expenses pursuant to 33 U.S.C. § 907. After reviewing the record de novo, we hold that substantial medical evidence existed to support the ALJ's finding that Washnock was entitled to compensation and benefits because of his work-related permanent total disability, although we remand for a more complete explanation of the ALJ's determination of the date of maximum medical improvement. It is also not clear whether the ALJ applied the correct legal standard in determining the issue of the existence of a preexisting permanent partial disability as required for § 8(f) relief, so we reverse and remand with instructions to apply the cautious employer standard in resolving this issue.
 
 I. BACKGROUND
 
 2
 Respondent Vernon Washnock worked for Morehead Marine as a harbor pilot from the summer of 1982 until 1985, when he began working as a dock foreman. Washnock is five feet-ten inches tall and for most of his adult life has weighed over 300 pounds, perhaps weighing as much as 360 pounds on the date of the disputed work-related accident. While working as a dock foreman, he apparently sustained a work-related injury on February 10, 1989. On that day, Washnock was lifted by forklift into the back of a delivery truck to assist in unloading wiping rags used by Morehead Marine. While Washnock and the driver of the delivery truck were using a dolly to load one of the 600 pound pallets onto a forklift, the pallet slipped off of the dolly and onto Washnock's left foot. Washnock was able to extricate his foot, but in the process he twisted his back muscles.
 
 
 3
 Washnock sought treatment for pain in his legs and back after the accident, and the parties have stipulated that Washnock gave timely notice of the injury to Morehead Marine. See J.A. at 12 (Decision and Order). Washnock made attempts to continue working after the date of the accident, but eventually, despite medical treatment from his personal physician and medical specialists, Washnock alleges that he was no longer able to continue working after the beginning of March of 1989. Washnock had been treated in the past for a variety of medical conditions including obesity, phlebitis, venous insufficiency, diabetes mellitus type II, a fractured hip and hip surgery from an automobile accident, and prior back injuries and surgery.
 
 
 4
 On January 23, 1990, Washnock filed a claim for workers' compensation benefits under the LHWCA as amended, 33 U.S.C. § 901, et. seq. The ALJ's Decision and Order awarded benefits to Washnock and denied Morehead Marine's application for a limitation of its compensation liability pursuant to § 8(f) of the LHWCA, 33 U.S.C. § 908(f). See J.A. at 7-31 (Decision and Order). The Decision and Order awarded Washnock benefits for temporary total disability from February 10, 1989, through March 6, 1992, and for permanent total disability from March 6, 1992, and continuing based on the stipulated average weekly wage of $600. The ALJ's order was affirmed by the Benefits Review Board, and this appeal followed.
 
 II. ANALYSIS
 
 5
 The petitioners have raised several issues on appeal. They allege that the ALJ erred: (1) in determining that the accident of February 10, 1989 resulted in a permanent total disability supported by substantial evidence; (2) in denying petitioners' claim for § 908(f) relief; (3) in finding that the claimant reached maximum medical improvement on March 6, 1992; and (4) in finding that the claimant is entitled to medical expenses pursuant to 33 U.S.C. § 907. We will address each of these claims in turn.
 
 A. THE STANDARD OF REVIEW
 
 6
 "This court has jurisdiction over petitions for review of final decisions of the Board pursuant to 33 U.S.C. § 921(c)." Paducah Marine Ways v. Thompson, 82 F.3d 130, 133 (6th Cir.1996). We review ALJ and Board decisions on a limited basis. In reviewing the decision of an ALJ, the standard of review is whether the decision is supported by substantial evidence and is consistent with applicable law. See O'Keeffe v. Smith, Hinchman & Grylls Assocs., 380 U.S. 359, 362, 85 S.Ct. 1012, 1014, 13 L.Ed.2d 895 (1965); Consolidation Coal Co. v. Worrell, 27 F.3d 227, 230-31 (6th Cir.1994). "This court has plenary authority to review the Board's legal conclusions, and reviews such conclusions de novo." Paducah Marine Ways, 82 F.3d at 133.
 
 
 7
 This court reviews the record independently to determine whether substantial evidence supports the ALJ's findings. See id.; Brown v. ITT/Continental Baking Co., 921 F.2d 289, 293 (D.C.Cir.1990). As this court stated in Consolidation Coal Co. v. Worrell, considering this same standard under the Black Lung Act, "When the question is whether the ALJ reached the correct result after weighing conflicting medical evidence, our scope of review ... is exceedingly narrow. Absent an error of law, findings of facts and conclusions flowing therefrom must be affirmed if supported by substantial evidence." 27 F.3d at 230-31 (quotation omitted). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brainard v. Secretary of Health and Human Servs., 889 F.2d 679, 681 (6th Cir.1989); see also Paducah Marine Ways, 82 F.3d at 133. "The record must be reviewed 'as a whole, including whatever in the record fairly detracts from its weight.' " Id. (quoting Mullen v. Bowen, 800 F.2d 535, 545-46 (6th Cir.1986) (en banc) (quotations omitted)).
 
 B. THE WORK-RELATED INJURY
 
 8
 In order to establish a claim for disability benefits under the LHWCA, a claimant must establish the existence of a "disability," defined as an "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." 33 U.S.C. § 902(10). An "injury" is defined in part as an "accidental injury or death arising out of and in the course of employment...." 33 U.S.C. § 902(2). The injury, however, does not have to be the sole cause of the disability. Under the aggravation rule, when an "employment injury aggravates, accelerates, or combines with a preexisting impairment to produce a disability greater than that which would have resulted from the employment injury alone, the entire resulting disability is compensable." Port of Portland v. Director, OWCP, 932 F.2d 836, 839 (9th Cir.1991); see also Strachan Shipping Co. v. Nash, 782 F.2d 513, 517 (5th Cir.1986) (en banc); Newport News Shipbuilding & Dry Dock Co. v. Fishel, 694 F.2d 327, 329 (4th Cir.1982). "In keeping with the Act's purposes, the ALJ must resolve doubtful questions of fact in favor of the claimant." Brown, 921 F.2d at 295.
 
 
 9
 After reviewing the medical evidence on record, the ALJ found "that the Claimant's pre-existing back problems and conditions of phlebitis/chronic venous insufficiency have been exacerbated by his work-related injury on February 10, 1989." J.A. at 27 (Decision and Order). Petitioners claim that the ALJ erred in determining that Washnock's preexisting health conditions were aggravated by any work related injury of February 10, 1989. Petitioners argue that "the medical testimony and evidence below established unequivocally Claimant's phlebitis, chronic venous insufficiency and back pain resulted from his obesity combined with the natural progression of his various pre-existing disabilities." Petrs' Br. at 15 (emphasis added).
 
 
 10
 The ALJ relied in part on the testimony and reports of Washnock's personal physician for nearly two decades, Dr. James Siles, who testified that Washnock has an acute lumbar strain and phlebitis of his lower extremities for which he wears support hose. See J.A. at 480. Dr. Siles also testified that Washnock's back pain was at a minimum exacerbated by the February 10, 1989 accident, see J.A. at 480-81, and that this accident aggravated the chronic venous sufficiency and thrombophlebitis problems in Washnock's legs. See J.A. at 481-82. Generally, an ALJ is entitled to give greater weight to the opinion of a treating physician than to that of non-treating physicians. See Tussey v. Island Creek Coal Co., 982 F.2d 1036, 1042 (6th Cir.1993). In addition to Dr. Siles, however, the ALJ also relied on Dr. Michael A. Grefer who corroborated Dr. Siles' opinion, stating that the "pre-existing factors were definitely aroused into disabling reality by the [February 10, 1989] accident." J.A. at 314 (Dr. Grefer Report).
 
 
 11
 Having found that the work accident resulted in an injury to Washnock, to determine if Washnock was suffering from a permanent or partial disability, the ALJ properly considered Washnock's "age, education, industrial history, and the availability of work he can perform after the injury," J.A. at 28 (Decision and Order) (citing American Mutual Ins. Co. of Boston v. Jones, 426 F.2d 1263 (D.C.Cir.1970)); see also Crum v. General Adjustment Bureau, 738 F.2d 474, 479 (D.C.Cir.1984). This is appropriate because total disability under the LHWCA is an economic as well as a medical concept. See Quick v. Martin, 397 F.2d 644, 648 (D.C.Cir.1968). Based on the weight of the medical evidence, and Washnock's ability to perform alternative work in the area, the ALJ concluded that Washnock is permanently disabled. See J.A. at 29 (Decision and Order).
 
 
 12
 Although three of the doctors who treated or examined Washnock could either not trace his disability to the February 10, 1989 injury or did not believe that Washnock was permanently disabled, there was substantial evidence in support of the ALJ's decision. First, Dr. Siles found that Washnock is totally disabled due to the back injury, phlebitis, and leg pain. See J.A. at 402-03 (Dr. Siles Notes). Second, Dr. Gordon W. Air, to whom Dr. Siles had referred Washnock and who treated Washnock for his back injuries, found that Washnock's prognosis for a return to heavy physical labor is guarded due to chronic lumbar strain. See J.A. at 298 (Dr. Air Report). Dr. Robert W. Noelker, a licensed clinical psychologist, found a major psychological overlay to Washnock's physical injuries, and found that Washnock's poor education and very low average intelligence made it highly unlikely that he will be rehabilitated and/or occupationally competitive in the near future. See J.A. at 450 (Dr. Noelker Letter).
 
 
 13
 Once a claimant establishes a prima facie case of total disability by showing that he or she can no longer perform his or her usual work because of a work-related injury, the burden shifts to the employer to demonstrate the availability of suitable alternative employment that the claimant is capable of performing in the geographical area and that he or she could secure if he or she diligently tried. See, e.g., Louisiana Ins. Guaranty Ass'n v. Abbott, 40 F.3d 122, 127 (5th Cir.1994); Rivera v. United Masonry, Inc., 948 F.2d 774, 775 (D.C.Cir.1991). After determining that Washnock was permanently disabled because of the February 10, 1989 work accident, see J.A. at 29 (Decision and Order), the ALJ found that the petitioners had not carried their burden of demonstrating that such a job existed for Washnock in the area. See J.A. at 29 (Decision and Order).
 
 
 14
 The only evidence introduced by the petitioners is an allusion to an alleged job offer made to Washnock via a vocational specialist, which Washnock indicated he would accept. The ALJ, after further questioning, found that any job offer that may have been made was only temporary, and even the petitioners indicated that Washnock's physical restrictions would have made the job "impractical." J.A. at 222-23 (Tr., Carlisle Test.). The petitioners' failure to introduce any evidence of the availability of a suitable alternative employment in the geographical area for Washnock indicates that the ALJ properly found that the petitioners did not carry their burden.
 
 
 15
 Based on the entire medical record and taking into account Washnock's education and work history, we hold that the ALJ's finding that the February 10, 1989 accident aggravated Washnock's existing medical condition to a point of permanent total disability is supported by substantial evidence.
 
 C. SECTION 8(f) RELIEF
 
 16
 Section 8(f) of the LHWCA limits an employer's compensation liability to the first 104 weeks of permanent disability with any additional compensation being paid from the "special fund" established by § 44 of the LHWCA. 33 U.S.C. §§ 908(f), 944. As this court has previously noted,
 
 
 17
 The "special fund" provision is an exception to the LHWCA's general rule of workers' compensation law, that an employer takes an employee as he finds him. Under the exception, when an employee having an existing permanent partial disability is injured, with the result that the injury and preexisting condition in combination result in a materially and substantially greater permanent partial disability or in permanent total disability, payment of workers' compensation benefits is apportioned between the employer and the special fund, with the employer responsible, at most, for 104 weeks of compensation.
 
 
 18
 American Ship Bldg. Co. v. Director, OWCP, 865 F.2d 727, 728 (6th Cir.1989). To receive relief under § 8(f), an employer must show: (1) that the claimant had a preexisting permanent partial disability; (2) that this preexisting permanent partial disability was in existence prior to the employment injury at issue; and (3) that the current disability is not due solely to the recent employment injury. See id. at 729-32; see also 33 U.S.C. § 908(f). Because § 8(f) is an affirmative defense to compensation liability, the employer has the burden of proving each of the elements required for application of the provision. See Director, OWCP v. Newport News Shipbuilding & Dry Dock Co., 8 F.3d 175, 182-83 (4th Cir.1993), aff'd on other grounds, 514 U.S. 122, 115 S.Ct. 1278, 131 L.Ed.2d 160 (1995).
 
 
 19
 The ALJ resolved the question of § 8(f) relief by focusing on the first part of the test and finding that the preexisting health conditions did not amount to a permanent partial disability. The main dispute in this case is whether the ALJ applied the proper legal standard in reaching this conclusion.
 
 
 20
 The LHWCA does not define the term "permanent partial disability" for the purposes of § 8(f). Two competing theories have been developed to define the term in this context: the "economic disability theory" and the "cautious employer test." Petitioners argue that the ALJ erroneously applied an "economic disability theory" to define the term, which has been rejected by several other courts of appeals. Petrs' Br. at 28; see also Director, OWCP v. Campbell Indus., Inc., 678 F.2d 836, 840 (9th Cir.1982), cert. denied, 459 U.S. 1104, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983); Equitable Equip. Co. v. Hardy, 558 F.2d 1192, 1197 (5th Cir.1977); Atlantic and Gulf Stevedores, Inc. v. Director, OWCP, 542 F.2d 602, 609 (3rd Cir.1976). The economic disability theory essentially requires the employee to be disabled in an economic sense, "that is, disability implies a condition which actually or presumptively reduces the employee's wage earning capacity." Equitable Equipment Co., 558 F.2d at 1196 (footnotes omitted). This theory is based on the statutory definition of disability in § 2(10) of the LHWCA, defining the term as the "incapacity because of injury to earn the wages which the employee was receiving at the time of injury," 33 U.S.C. § 902(10), and the presumed permanent partial disabilities detailed in 33 U.S.C. §§ 908(c)(1)-(20).
 
 
 21
 An alternative theory is to allow recovery where either the economic disability test is met or the cautious employer test is satisfied. The cautious employer test finds a claimant to have a permanent partial disability when the claimant had "such a serious physical disability in fact that a cautious employer ... would [be] motivated to discharge the handicapped employee because of a greatly increased risk of employment-related accident and compensation liability. " C & P Telephone Co. v. Director, OWCP, 564 F.2d 503, 513 (D.C.Cir.1977) (emphasis added).[1] The cautious employer test was adopted to help fulfill the purpose of § 8(f), see id. at 513, which the Supreme Court has held is "the prevention of employer discrimination against handicapped workers." Lawson v. Suwannee Fruit & S.S. Co., 336 U.S. 198, 201, 69 S.Ct. 503, 504, 93 L.Ed. 611 (1949) (interpreting an earlier version of section 8(f)[2]). As the D.C. Circuit articulated in C & P Telephone Co., if the definition of "permanent partial disability" under § 8(f) is limited to cases where an individual's wage earning capacity is reduced, the congressional purpose would be frustrated. "For example, if a worker with a serious permanent back impairment (one of the "other cases" [under § 8(c)(21) ] ) is still able to perform work adequately, that worker has a physical disability but not an economic disability, because his wage earning capacity is not reduced. But this worker nevertheless poses an increased compensation risk to his employer by virtue of his physical disability." C & P Telephone Co., 564 F.2d at 513. Thus, an employer, absent § 8(f), would have an incentive to discriminate against the employee in order to avoid being liable for any total disability brought about by a workplace injury which aggravates or exacerbates a preexisting health condition. For these reasons, we now adopt the cautious employer test to fulfill the purposes of § 8(f).[3]
 
 
 22
 The Director argues that it does not matter which test this court adopts, because the ALJ relied on Director, OWCP v. Berkstresser, 921 F.2d 306 (D.C.Cir.1990), a case following the cautious employer test, and still found no permanent partial disability. It is unclear from the record, however, whether the ALJ applied the cautious employer test. The ALJ cites Berkstresser to establish the three-part standard for invoking § 8(f) relief, but does not in explicit words mention the "cautious employer test" or even appear to apply the test. See J.A. at 30 (Decision and Order). The ALJ simply makes a conclusory statement that Morehead failed to demonstrate that Washnock
 
 
 23
 was, in any way, suffering from a permanent partial disability prior to his work-related injury on February 10, 1989. The Claimant had been employed by the Employer for approximately seven years prior to the time of his injury and had not missed work or been remiss in his assigned duties. Thus, while the Claimant had health problems,[4] including a history of injury with back surgery, the problems did not manifest themselves in any degree of permanent disability prior to the February 10, 1989, injury.
 
 
 24
 J.A. at 30 (Decision and Order). As the Ninth Circuit pointed out in Director, OWCP v. General Dynamics Corp., 982 F.2d 790 (2nd Cir.1992), however, a situation can be imagined "in which an asymptomatic condition, not physically impairing the employee in any way, leaves him more susceptible in the future to a serious injury than a completely healthy employee, such that a prospective employer would discriminate against the applicant. Such discrimination would be contrary to the congressional purpose in enacting section 8(f)." Id. at 797.
 
 
 25
 It is unclear whether the ALJ applied the cautious employer test or the economic disability test. We therefore remand to the ALJ to apply the cautious employer standard to determine whether there was a preexisting permanent partial disability, and, if he so finds, to resolve the remaining steps of the § 8(f) analysis.
 
 D. MAXIMUM MEDICAL IMPROVEMENT
 
 26
 The petitioners also contest the ALJ's determination of the time that Washnock reached maximum medical improvement. Maximum medical improvement is reached at that point where a physician believes that further treatment will not improve a claimant's condition. See Louisiana Ins. Guaranty Ass'n v. Abbott, 40 F.3d 122, 126 (5th Cir.1994); Diosdado v. Newpark Shipbuilding & Repair, Inc., 1997 WL 369949, * 5 (Ben. Rev. Bd. June 10, 1997). The parties stipulated that Washnock had reached maximum medical improvement, but disagreed as to the exact date it was reached.
 
 
 27
 Petitioners contend that Washnock reached maximum medical improvement no later than September 25, 1989, the date of his last visit with Dr. Air for his back. This date, however, does not even meet the standard articulated by the petitioners. Dr. Siles's letter dated September 18, 1989 indicated that Washnock was "impeded by lack of finances to help with progression of therapy." J.A. at 404 (Dr. Siles Letter). Dr. Air's office notes, dated September 25, 1989, stated that Washnock "hasn't obtained back support and has not been to physical therapy because W.C. [workers' compensation] has not recognized his claim ... they are 'investigating it.' " J.A. at 434 (Dr. Air Notes). Dr. Air's office notes, dated September 21, 1990 indicate that Washnock had not obtained a brace or gone to physical therapy because his worker's compensation case had not been recognized. See id. Based on the anticipated medical treatment by Dr. Air, it seems that petitioners have no basis for suggesting that September 25, 1989 at the latest is the date Washnock reached maximum medical improvement. The fact that Washnock was unable to afford medical treatment from Dr. Air does not mean that such treatment, if undertaken, would have been unsuccessful. Dr. Air's notes indicate that he believed that further treatment would improve Washnock's condition.
 
 
 28
 There is some question, however, as to whether the ALJ's determination that March 6, 1992 represents the date of maximum medical improvement is appropriate. Although the ALJ states that he relies on Dr. Siles's finding "that the Claimant has reached maximum medical improvement as of March 6, 1992," J.A. at 29 (Decision and Order), there is no evidence in the record of Dr. Siles making such a statement.[5] Indeed Dr. Siles claims that he could not say what date maximum medical improvement was reached; when asked for the date on which Washnock reached maximum medical improvement, Dr. Siles simply replied that "I can't say. I mean I just--that's an assumption over a long period of time." J.A. at 505 (Dr. Siles Dep.).
 
 
 29
 Under the Administrative Procedure Act, 5 U.S.C. § 557(c)(3)(A), an ALJ's decision is required to include a discussion of "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c)(3)(A). Strict adherence to this statutorily-imposed obligation "is critical to the appellate review process.... The courts have respected this requirement [in § 557(c)(3)(A) ] by remanding cases where the reasoning for the a.l.j.'s [sic] conclusion is lacking and therefore presents inadequate information to accommodate a thorough review." Director, OWCP v. Congleton, 743 F.2d 428, 429 (6th Cir.1984). Absent a specific, and accurate, reference to the evidence supporting an ALJ's decision, we hold that the ALJ has failed to fulfill his duty to explain as required by § 557(c)(3)(A), and we must remand for a proper explanation. Accord See v. Washington Metro. Area Transit Auth., 36 F.3d 375, 384 (4th Cir.1994) (noting that the Fourth Circuit "has long required specific references to the evidence supporting an ALJ's decision as part of the ALJ's 'duty of explanation' "). This does not mean that the ALJ's decision cannot be upheld unless such a statement by Dr. Siles is discovered, but it does require further review of the record to establish substantial evidence that March 6, 1992 could be found as the date of maximum medical improvement.
 
 E. MEDICAL EXPENSES
 
 30
 Petitioners' argument that medical expenses should not be awarded to the complainant is based on their argument that Washnock's back condition, phlebitis, and venous insufficiency were not caused or aggravated by the February 10, 1989 accident. See Petrs' Br. at 33. For the reasons set out, supra section II. B., there is substantial evidence on the record to support the ALJ's determination.
 
 III. CONCLUSION
 
 31
 For the foregoing reasons, the ALJ's decision is AFFIRMED IN PART and REVERSED IN PART and REMANDED for a determination of § 8(f) relief and the date of maximum medical improvement. The ALJ's determination that Washnock suffered from a permanent total disability caused by the February 10, 1989 work-related accident and regarding the medical expenses is AFFIRMED.
 
 
 
 *
 The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 The Director claims that this standard may be invalid now based on Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 479, 112 S.Ct. 2589, 2596, 120 L.Ed.2d 379 (1992), holding that statutory language must be given its plain meaning and may not be interpreted differently within the same statutory section. This decision does not address § 8(f) specifically, and is inconsistent with the Supreme Court's pronouncement under an older, similar, version of § 8(f), that this was not "the usual case" where "[s]tatutory definitions control the meaning of statutory words," because to so construe the words in § 8(f) would "create obvious incongruities in the language." Lawson v. Suwannee Fruit & S.S. Co., 336 U.S. 198, 201, 69 S.Ct. 503, 93 L.Ed. 611 (1949)
 
 
 [2]
 As this court noted in American Ship Building Co., "[t]he same general purpose, with a very significant shift in emphasis toward actually encouraging the employment of the handicapped, was expressed by Congress in 1972, when it amended 33 U.S.C. § 908(f) as a part of the Longshore and Harbor Workers' Compensation Act Amendments of 1972, Pub.L. 92-576, 86 Stat. 1251 (codified as amended in 33 U.S.C. §§ 901-950) (1972)." 865 F.2d at 731 (footnote omitted). The court went on to note that "[t]he same purpose was again stated in 1984 by the House Education and Labor Committee, in its explanation of the Longshore and Harbor Workers' Compensation Act Amendments of 1984 ...: 'Section 8(f) was intended to encourage employers to hire disabled workers and permits such employers to distribute among all employers subject to LHWCA, much of the cost of compensating such a worker should the worker suffer a subsequent injury.' " Id. at n. 8
 
 
 [3]
 Petitioners claim that this court has adopted the "cautious employer test," but the Director points out that in the case relied upon, American Ship Building Co., 865 F.2d at 729 n. 5, this court merely claimed that the rule was well stated by another circuit, and simply addressed the issue of manifestation to the employer, since the existence of a permanent partial disability had been conceded by the Director in that case. Dir.'s Br. at 13 n. 5
 In adopting the cautious employer test, we join the large number of courts of appeals that have adopted this approach. See, e.g., Director, OWCP v. Bath Iron Works Corp., 129 F.3d 45, 50 (1st Cir.1997); Director, OWCP v. General Dynamics Corp., 982 F.2d 790, 793, 796-97 (2nd Cir.1992) (applying cautious employer test and upholding board's decision granting § 8(f) relief in back injury case); Lockheed Shipbuilding v. Director, OWCP, 951 F.2d 1143, 1145 (9th Cir.1991) (applying cautious employer test and upholding ALJ's decision in back injury case); C & P Telephone Co., 564 F.2d at 510-513; Equitable Equipment Co., Inc. v. Hardy, 558 F.2d 1192, 1197 (5th Cir.1977) (rejecting the economic test alone and adopting the reasoning of the cautious employer test, although not the name).
 
 
 [4]
 Petitioners contend that Washnock suffered from preexisting permanent disabilities and reference the medical reports identifying: (1) obesity; (2) diabetes mellitus type II; (3) venous insufficiency; (4) phlebitis; (5) fractured hip and hip surgery; and (6) prior back injuries and surgery. Petrs' Br. at 25
 
 
 [5]
 Washnock also states in his final brief that Dr. Siles testified that March 6, 1992 was the date of maximum medical improvement, and provides a citation to Dr. Siles's deposition on page 506 of the Joint Appendix. Resp.'s Br. at 12, 26. Nowhere on page 506 of the Joint Appendix, however, does Dr. Siles state that March 6, 1992 was the date of maximum medical improvement