In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-4121 & 00-3881

Beverly California Corporation, formerly
known as Beverly Enterprises and its
Operating Divisions, Wholly Owned Subsidiaries
and Individual Facilities and Each of Them,

Petitioner/Cross-Respondent,

v.

National Labor Relations Board,

Respondent/Cross-Petitioner.

On Petition for Review and Cross-Application
for the Enforcement of an Order
of the National Labor Relations Board.
Nos. 6-CA-20188 et al.

Argued March 26, 2001--Decided June 8, 2001

Before Flaum, Chief Judge, and Bauer and
Rovner, Circuit Judges.

Bauer, Circuit Judge. The National Labor
Relations Board ("NLRB") honored Janet
Glenn's and Debra Wiley's request to
disregard the settlement agreement in
which they waived their right to any
backpay the Board might award for Beverly
California Corporation's violation of
their rights under the National Labor
Relations Act ("NLRA"). After a hearing,
the ALJ awarded Glenn $19,169 and Wiley
$29,903. Beverly asks us to reverse the
NLRB and find that the settlement
precluded the backpay award. We enforce
the Board's order.

I.  Background

Glenn and Wiley, members of the United
Food and Commercial Workers Local 917,
were discharged in 1987 from employ at
the Sycamore Village Health Center, owned
by Beverly. Glenn and Wiley were
plaintiffs in two separate charges
against Beverly--an NLRA charge and a
civil rights claim--which progressed
simultaneously. First, on behalf of
Glenn, Wiley, and others, the Union
charged Beverly with violating the

National Labor Relations Act, 29 U.S.C. sec. 158(a)(1) & (3), and the NLRB's General Counsel filed a complaint against Beverly. Without the General Counsel's consent, the Union and employees agreed with Beverly to settle the suit for $1,000, which Beverly paid. However, the ALJ refused to honor the settlement and in August of 1991, without deciding the backpay issue, the ALJ determined that Beverly violated the Act. Beverly appealed this decision. Second, during the same time frame that the labor charge was pending, Glenn and Wiley filed a civil rights charge against Beverly with the Indiana Civil Rights Commission ("ICRC").

Glenn, Wiley, and Beverly treated the labor and civil rights charges separately, using different sets of attorneys to handle each suit. Todd Ponder handled the civil rights case for Beverly while Glenn and Wiley relied on ICRC attorney Frederick Bremer. Similarly, the NLRB General Counsel handled Glenn and Wiley's NLRA charge and Beverly relied on an unnamed fourth attorney. Ponder and Bremer became aware of the NLRB proceeding and the ALJ's liability decision while deposing Glenn regarding the civil rights case. Believing that the NLRB would hold Beverly responsible for some amount of backpay, Ponder endeavored to settle the civil rights suit in a way which would minimize the amount. The settlement provided Glenn and Wiley with some backpay for the labor violation, which the attorneys determined using ICRC, rather than NLRB, procedures. Taking into account wages that Glenn earned and the unemployment benefits she received after being fired, a mutually agreed-upon formula for determining the wages Wiley earned after her termination, and the $1,000 Beverly already paid each woman, the attorneys figured Glenn and Wiley should receive $4,000 and $5,000 in backpay respectively. Beverly also offered to reinstate both plaintiffs, an option both declined.

Beverly conditioned the settlement in a document labeled a "Supplemental Settlement Agreement": Glenn and Wiley agreed to treat the amounts they received as full backpay and relinquish their right to any additional backpay from the NLRA charge. Both attorneys understood

that the intended effect of the language was to foreclose the employees' right to backpay from the NLRA charge. Neither attorney and neither of the employees notified the Union or NLRB General Counsel about this settlement until it was final. Glenn and Wiley, both confused by the above language, asked Bremer if the Supplemental Settlement Agreement waived their right to any backpay the NLRB may award. According to the employees, whose version of the facts the ALJ credited, Bremer assured them that they would be able to collect any backpay the NLRB might award.

Subsequently, the ALJ held a hearing to determine, inter alia, whether Glenn and Wiley were entitled to backpay. The ALJ applied the Independent Stave factors and struck down the settlement. She found that neither the Union nor the General Counsel approved the settlement agreement before it was final and that upon learning of it, the General Counsel vigorously opposed it. Further, the ALJ stated that the level of backpay was not reasonable given the low level of risk in the NLRB litigation due to the ALJ's previous finding of an illegal action by Beverly. Finally, the ALJ found that both Beverly's attorney Ponder and ICRC attorney Bremer misrepresented aspects of the settlement to Glenn and Wiley; Ponder by placing the official ICRC caption on two of the three settlement documents andhaving the ICRC deliver the documents to the women although the ICRC was not a party to the settlement; and Bremer, by fraudulently misrepresenting that the settlement still allowed Glenn and Wiley to collect any further backpay that the NLRB may award. Moreover, both attorneys represented that Glenn and Wiley were getting "full" backpay without telling them that they would be entitled to much more using NLRB calculation methods. Applying the NLRB's formula for calculating backpay, the ALJ found that Glenn was entitled to $19,169 offset by the $4,000 Beverly already paid and that Wiley was entitled to $29,903 less the $5,000 Beverly already paid. Beverly appealed to the NLRB, which adopted the ALJ's findings, except the finding of fraud by Bremer. Beverly now appeals, arguing that the ALJ and NLRB misapplied Independent Stave. The NLRB cross-petitions for enforcement of its order.

II.  Discussion

The sole issue in this case is whether the NLRB correctly applied its four-part test when it determined that it was not bound to honor the settlement agreement. We defer to the NLRB's factual decisions as long as they are supported by "substantial evidence." See Beverly California Corp. v. N.L.R.B., 227 F.3d 817, 829 (7th Cir. 2000). Substantial evidence constitutes evidence which a reasonable fact finder would consider adequate to support the conclusion. See id. (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); American Grain Trimmers, Inc. v. Office of Workers' Comp. Programs, 181 F.3d 810, 817-18 (7th Cir. 1999). As long as substantial evidence supports the Board's decision, the presence of contradicting evidence is not of consequence. See Beverly California Corp., 227 F.3d at 830.

The NLRB is not statutorily obligated to honor settlement agreements. See N.L.R.B. v. Int'l Bhd. of Elec. Workers, 992 F.2d 990, 992 (9th Cir. 1993). Exercising its discretion, the NLRB upholds settlements unless a "settlement . . . is at odds with the [NLRA] or . . . with the Board's policies." Independent Stave, 287 N.L.R.B. 740, 741. In making this determination, the Board considers all the circumstances surrounding the settlement, including:

(1) whether the charging party(ies), the respondent(s), and any of the individual discriminatee(s) have agreed to be bound, and the position taken by the General Counsel regarding the settlement; (2) whether the settlement is reasonable in light of the nature of the violations alleged, the risks inherent in litigation, and the stage of the litigation; (3) whether there has been any fraud, coercion, or duress by any of the parties in reaching the settlement; and (4) whether the respondent has engaged in a history of violations of the Act or has breached previous settlement agreements resolving unfair labor practice disputes.

Id. at 743. In this case, the ALJ considered only the first three factors.

The ALJ weighed the first factor in

favor of scuttling the settlement, noting that neither the General Counsel nor the Charging Party (the Union) were consulted about the settlement before Glenn and Wiley signed it. Upon learning of the settlement, the General Counsel expressly disapproved it. The ALJ acknowledged that Wiley, Glenn, and Beverly approved the settlement. Beverly urges us to discount the relevancy of the General Counsel's and Union's opinion because the settlement did not impact their ability to proceed with the violation charge or seek other relief. It only affected the amount of backpay Beverly had to pay Glenn and Wiley. Further, Beverly argues that because the Union approved a prior settlement for $1,000, it would undoubtedly approve this settlement as well.

A review of NLRB decisions reveals that the agency considers a General Counsel's and Charging Party's opposition to a settlement to be a powerful reason to disregard the settlement unless the NLRB considers the reasons behind the opposition to be illegitimate. See Int'l Bhd. of Elec. Workers, 992 F.2d. at 992–93 (basing decision to disregard settlement in part on General Counsel's adamant opposition to a settlement regarding amount of backpay); Fischbach/Lord Elec. Co., 300 N.L.R.B. 474, 476-77 (1990) (giving weight to General Counsel's refusal to approve settlement agreement); Oil, Chem. & Atomic Workers Int'l, 288 N.L.R.B. 20, 22 (1988) (emphasizing that both the General Counsel and the Charging Party opposed the settlement). Further, both the General Counsel and the Union were completely circumvented in this settlement process. Substantial evidence supported the ALJ's and Board's decision to weigh the first factor in favor of disregarding the settlement. The fact that the Union previously approved a settlement for $1,000 is evidence in Beverly's favor, but does not undermine the basis for the Board's decision.

The ALJ also found the second factor, the reasonableness of the settlement in light of the risk involved, to weigh in favor of disregarding the settlement. Although the backpay hearing had not yet taken place, the issue of liability had already been decided in the employees' favor. We acknowledge that the employees

still encountered various risks in the backpay determination process, see Am. Pac. Concrete Pipe Co., 290 N.L.R.B. 623, 624 (1988) (discussing risks inherent in backpay hearings), and that Beverly appealed the liability finding, but the litigation risks that Glenn and Wiley faced were substantially reduced. The settlement provided the employees with a strikingly smaller amount of money than the Board decided they could collect, 15% of the Board-determined amount for Wiley and 17% for Glenn. Beverly contends that the backpay amount was reasonable because it was calculated according to the ICRC's formula. However, the Board commonly looks to the amount of backpay employees could recover according to its own calculations to determine the reasonableness of the settlement. See, e.g., Frontier Foundries, Inc., 312 N.L.R.B. 73, 74 (1993) (considering that settlement provided only for 6% of full backpay as determined by the Board); Am. Pac. Concrete Pipe Co., 290 N.L.R.B. at 624. In comparison to the amount the Board unanimously determined Glenn and Wiley could recover, the settlement provides a paltry amount. Given the reduced litigation risk the employees faced, (even Beverly's attorney realized that the company would likely pay some backpay) the ALJ deemed the amount to be unreasonable. This decision was supported by substantial evidence.

Analysis regarding the third factor is more complex, and we will not delve into it. The first and second Independent Stave factors alone justify the NLRB's decision not to honor the settlement agreement. We Enforce the Board's order requiring Beverly to pay Glenn and Wiley additional backpay.