# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 04-1933

MARINETTE MARINE CORPORATION and
SIGNAL MUTUAL INDEMNITY ASSOCIATION,

*Petitioners*,

*v.*

OFFICE OF WORKERS' COMPENSATION PROGRAMS,
MYRON BAUMLER, and CRUM & FORSTER MANAGERS
CORPORATION OF ILLINOIS,

*Respondents*.

Petition for Review of an Order
of the Benefits Review Board.
No. 03-BRB-0380

ARGUED SEPTEMBER 7, 2005—DECIDED DECEMBER 12, 2005

Before BAUER, POSNER, and EVANS, *Circuit Judges*.

EVANS, *Circuit Judge*. After years of working in the shipbuilding industry, Myron Baumler needed back surgery. The question in this case is which of two workers' compensation carriers should pay for it; the answer depends on whether Baumler injured his back once or twice. An administrative law judge (ALJ) found that a first injury in 1997 was aggravated by a second injury in 2001, so he assigned liability to the carrier at the time of the second injury, consistent with the "aggravation rule" of maritime

workers' compensation law. The carrier insists that there was no second injury in 2001 and that Baumler's worsened condition was just the natural progression of his 1997 injury. We need to decide whether the ALJ's contrary finding is worthy of deference.

During most of his 30 years with Marinette Marine Corporation, Baumler has been a sheet metal press worker. The sheets of metal he works with are heavy, sometimes weighing up to 300 pounds. On April 8, 1997, as Baumler was carrying one of these sheets with a coworker, the coworker's grip failed and the sheet fell, hitting Baumler's foot just above his reinforced boot. Although no serious injury was immediately apparent, Baumler eventually began to feel pain in his lower back and right leg. An electromyography (EMG) and a magnetic resonance imaging test (MRI) suggested that a disc in Baumler's lower back had become displaced. This led to a first round of back surgery in early 1998, paid for by Marinette Marine's workers' compensation carrier at the time, Crum & Forster Insurance.

Baumler stayed away from heavy work for the next year and a half while his surgeon, Dr. Max Ots, kept an eye on his condition. Additional EMG and MRI tests showed some degeneration but no unusual changes, and by mid-1999 Baumler was cleared to return to the plate shop with restrictions on the amount he could lift. He was still in some pain, but given the difficulty of further treatment, Dr. Ots thought it best to leave well enough alone, barring a worsening of symptoms.

In July 2001, Baumler returned to Dr. Ots to report a recent increase in pain, which he ascribed to an incident at work 2 months earlier. On May 22, 2001, as he was stepping onto a 5-inch ledge to measure the curvature of a piece of metal, Baumler's back locked up. For 3 to 5 minutes he was unable to straighten his leg, and it took another 15

minutes of walking around before the cramping sensation subsided. He was then able to resume working, but over the next couple of months the pain in his leg and back became progressively worse. Dr. Ots ordered more tests, which convinced him that the displacement of Baumler's lower-back disc had become more severe and that surgery was now in order.

But there was a problem: Marinette Marine had switched workers' compensation insurance carriers, and the new carrier, Signal Mutual Indemnity Association, refused to authorize surgery. According to Signal, Baumler's lower-back trouble was unrelated to the May 2001 incident (Signal calls it a mere "cramping" incident) but instead was the natural development of his earlier condition. And because Signal was not the carrier for Marinette Marine when that earlier condition arose, it did not consider itself liable for Baumler's surgery and disability.

It fell to an ALJ at the U.S. Department of Labor to decide what role, if any, the May 2001 incident played in worsening Baumler's symptoms. Each side—Baumler joined by Crum & Forster against Signal and Marinette Marine—presented testimony from board-certified orthopedic experts. Dr. Kenneth Yuska, testifying on Baumler's behalf, stated that his condition was caused by a combination of the incidents of April 1997 and May 2001, the more recent one bearing about 25 percent of the blame. The opposing side's expert, Dr. Richard Lemon, disagreed: Baumler's back troubles were simply the result of old age and had nothing to do with either of the two work incidents. Baumler's treating physician, Dr. Ots, expressed a view somewhere in between: although he was convinced that the April 1997 incident was the primary cause of Baumler's condition, he also allowed that the May 2001 incident might have helped make that condition worse.

The ALJ evaluated the evidence under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*

Two parts of his analysis are relevant to this appeal. First, the ALJ considered whether Baumler's claim was compensable—that is, whether the injury arose in the course of Baumler's employment. *See* 33 U.S.C. § 902(2); *U.S. Indus./ Fed. Sheet Metal, Inc. v. Director, OWCP*, 455 U.S. 608, 615 (1982). Under § 920(a) of the Act, once certain preliminary showings have been made, it is presumed, "in the absence of substantial evidence to the contrary," that the claim "comes within the [Act's] provisions." *See American Grain Trimmers, Inc. v. OWCP*, 181 F.3d 810, 813-14 (7th Cir. 1999) (en banc). In this case, the ALJ found, Baumler made his preliminary *prima facie* case by showing that (1) he suffered a harm, and (2) conditions existed at his workplace that could have caused the harm. The ALJ asked whether Signal and Marinette could rebut the resulting presumption of compensability. He acknowledged Dr. Lemon's testimony that Baumler's back troubles were unrelated to work, but he considered the contrary view of Drs. Yuska and Ots to be "better reasoned and documented." He therefore found the presumption unrebutted, and so he concluded that Baumler's injury arose in the course of his employment.

The ALJ then had to determine which insurer was liable for the injury. If Baumler's condition was the natural progression of his April 1997 injury, then responsibility would fall to Crum & Forster, the insurer at the time of that injury. But if the May 2001 incident aggravated the earlier injury, then Signal would be responsible for the entire cost—a principle known as the "aggravation rule." *See New Haven Terminal Corp. v. Lake*, 337 F.3d 261, 267 (2nd Cir. 2003); *Travelers Ins. Co. v. Cardillo*, 225 F.2d 137, 144-45 (2nd Cir. 1955). Again, the ALJ was persuaded by the opinion of Drs. Yuska and Ots that the May 2001 incident had an aggravating effect on Baumler's earlier injury, so he found Signal to be the responsible carrier.

Signal and Marinette appealed the ALJ's decision to the Benefits Review Board, arguing primarily that the ALJ

erred in his application of the § 920(a) presumption. They insisted that they rebutted the presumption by producing evidence—Dr. Lemon's testimony—that the injury was not work-related, but the ALJ wrongly required them to meet a burden of persuasion rather than production. *See American Grain Trimmers, Inc.*, 181 F.3d at 817 (the presumption of compensability is overcome by production rather than persuasion). The Board agreed that this was an error but concluded that it was harmless. After the presumption is rebutted, the Board reasoned, the ALJ still needs to determine on the record as a whole whether the injury arose in the course of work. *See id.* at 819. And that, in effect, is what the ALJ did—he weighed the testimony of Dr. Lemon against the testimony of Drs. Yuska and Ots and concluded that the latter outweighed the former. Finding that conclusion to be rational and supported by substantial evidence, the Board affirmed the ALJ's decision.

Signal and Marinette make several arguments challenging the Board's and the ALJ's conclusions. First, they argue that Baumler did not even make out a *prima facie* case that he had a claim under the Act. They insist that the locking of Baumler's back in May 2001 caused only temporary pain and was therefore not an "injury" for which they can be liable. But Baumler isn't seeking compensation for his back locking up—he's seeking the cost of the surgery to get rid of the chronic pain he suffered in the months that followed. The petitioners can question whether the May 2001 incident actually contributed to that pain, but they can't realistically say that Baumler didn't suffer an injury.

Signal and Marinette also argue that the ALJ's determination of liability was tainted by his incorrect understanding of the § 920(a) presumption, so the error was not harmless. They insist that it is unclear whether, in the absence of that presumption, the ALJ would have found that the May 2001 incident aggravated Baumler's condition and therefore that Signal was liable for the cost of surgery.

But this argument appears to confuse compensability with liability. The § 920(a) presumption is about whether the claimant's injury is compensable—whether it happened in the course of work—not about who has to pay for it. *See Buchanan v. Int'l Transp. Servs.*, 33 BRBS 32, 1999 WL 197777, at *4 (BRB 1999) (§ 920(a) "plays no role in the determination of the responsible employer"). That question is addressed by the aggravation rule, which is applied without any presumptions, simply by "weighing . . . the evidence of record." *Id.* That's what the ALJ did in this case, after determining that Baumler's claim was indeed compensable. Signal and Marinette might have argued that the claim was not compensable at all, based on Dr. Lemon's testimony that Baumler's back troubles were simply the result of old age. But instead they conceded at oral argument that Baumler's condition was caused primarily by the April 1997 workplace accident. So the § 920(a) presumption is irrelevant, and the ALJ properly determined liability without reference to it.

The presumption aside, Signal and Marinette take issue with the ALJ's conclusion that the May 2001 incident was to blame for Baumler's back condition several months later. They point out that even Dr. Ots, Baumler's treating physician, testified that Baumler's symptoms were more or less a natural development from the April 1997 injury and only tentatively conceded that the May 2001 incident may have contributed to the worsening of those symptoms. But Dr. Ots wasn't the only physician on which the ALJ relied—Dr. Yuska was unequivocal in his assessment that the later incident was about 25 percent to blame for Baumler's condition. Also, the aggravation rule does not require that a later injury fundamentally alter a prior condition. It is enough that it produces or contributes to a worsening of symptoms. *See Bath Iron Works Corp. v. Preston*, 380 F.3d 597, 605 (1st Cir. 2004); *Delaware River Stevedores, Inc. v. Director, OWCP*, 279 F.3d 233, 241

(3rd Cir. 2002); *Kelaita v. Director, OWCP*, 799 F.2d 1308, 1311-12 (9th Cir. 1986). Whether Baumler's temporary back spasm was able to do that is something we are not equipped to decide—that was the ALJ's call, and he made it based on substantial evidence in the record.

We therefore DENY the petition for review and AFFIRM the decision of the Benefits Review Board.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*